# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 16-1273V
### Filed: August 21, 2023

| | |
|---|---|
| STACI PUTNAM, as Personal Representative of the Estate of A.B., Deceased, <br><br>             Petitioner, <br><br> v. <br><br> SECRETARY OF HEALTH AND HUMAN SERVICES, <br><br>             Respondent. | Special Master Horner |

*Michael G. McLaren, Black McLaren Jones Ryland & Griffee, P.C., Memphis, TN, for petitioner.*
*Christine Mary Becer, U.S. Department of Justice, Washington, DC, for respondent.*

### ORDER DENYING MOTION TO ALTER OR AMEND JUDGMENT[1]

       On October 5, 2016, petitioner filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa, *et seq.* (2012).  (ECF No. 1.)  Judgement entered awarding petitioner damages on January 8, 2021.  (ECF No. 140.)  Petitioner was subsequently awarded attorneys' fees and costs and that judgment entered on April 13, 2022.  (ECF No. 147.)  Petitioner now moves to modify the latter judgment to account for an additional invoice for expert costs incurred in the prosecution of the case.  (ECF No. 149.)  For the reasons discussed below, petitioner's motion is **DENIED**.

---

[1] Because this document contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002.  44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services).  **This means the document will be available to anyone with access to the internet.**  In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy.  If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

## I.      Procedural History

As noted above, this case was initially filed on October 5, 2016.  (ECF No. 1.)
Petitioner's current counsel entered the case on July 19, 2017, and an award of interim
attorneys' fees and costs was issued for departing counsel.  (ECF Nos. 56, 60.)  After
petitioner completed filing medical records, respondent filed a Rule 4(c) Report
recommending against compensation.  (ECF No. 70.)  Petitioner then filed expert
reports by Drs. Steinman and Souayah.  (ECF Nos. 78-86.)  Thereafter, additional
expert reports were exchanged.  The case was then reassigned to the undersigned.
(ECF Nos. 115-16.)  Petitioner also consulted a third expert (in pathology) but
determined that he would not produce a report.  (ECF No. 121.)  However, the parties
ultimately pursued settlement discussions and did eventually resolve the case in
mediation.  As noted above, judgment entered awarding petitioner damages on January
8, 2021.  (ECF No. 140.)  While the case was pending, Dr. Souayah prepared two
reports which totaled 23 pages.  (Exs. 43, 122.)  Dr. Steinman also prepared two reports
which totaled 32 pages.  (Exs. 45, 117.)

Petitioner subsequently filed a motion for attorneys' fees and costs on March 25,
2021.  (ECF No. 143.)  Petitioner sought a total of $170,807.92 in attorneys' fees and
costs, including $40,568.22 in costs.  (ECF Nos. 143.)  Petitioner's motion was
accompanied by a list of the firm's costs and the underlying invoices.  (ECF No. 143-2.)
The list reflects that three experts, Drs. Steinman, Souayah, and Miller (the pathologist
that was consulted but did not file a report), were each paid a "retainer" ranging from
$1,000.00 to $4,000.00.  (*Id.* at 168.)  An additional ledger entry shows Dr. Steinman
provided an additional "final bill" of just under $5,000.00.  (*Id.* at 169.)  However, no final
bill for Dr. Souayah was indicated.

A decision issued on April 12, 2022, awarding petitioner final attorneys' fees and
costs.  (ECF No. 145.)  A slight reduction was made to counsel's hourly billing, but the
requested costs were awarded in full.  (*Id.* at 4.)  The decision specifically noted the
absence of any itemized invoice from Dr. Souayah, but concluded that the amount
requested as a retainer ($4,000.00) was reasonable given the work Dr. Souayah had
performed.  (*Id.* at n. 4.) On April 13, 2022, the parties filed a joint notice not to seek
review of the fee decision and judgment entered awarding petitioner attorneys' fees and
costs totaling $168,581.92.  (ECF Nos. 146-47.)

After approximately thirteen months had passed, petitioner filed the instant
motion seeking to modify the judgment awarding attorneys' fees and costs.  (ECF No.
149.)  Accompanying the motion is an additional invoice from Dr. Souayah dated May
24, 2023, but reflecting work performed from March and April of 2018.  (ECF No. 149-
1.)  The invoice seeks $26,250.00 for Dr. Souayah's work in this case and petitioner's
motion seeks to reopen judgment for purposes of having this amount reimbursed.
Petitioner's motion indicated that the parties had conferred and respondent intended to
defer to the special master's discretion.  (ECF No. 149, p. 2.)  However, I ordered
respondent to file a response.

Respondent filed his response on June 20, 2023, confirming he defers to the special master.  (ECF No. 150, p. 2.)  Subsequently, however, I ordered petitioner to file a supplemental brief addressing whether the motion was time barred under the relevant rules.  (ECF No. 151.)  Petitioner filed a supplemental brief on July 24, 2023. (ECF No. 152.)  Thereafter, I ordered respondent to file a response to the supplemental brief and instructed that respondent must "specifically address his understanding of the legal issues presented" regardless of whether he takes a position on the ultimate outcome of the motion. (ECF No. 153, p. 1.)  Respondent filed his supplemental response on August 7, 2023.  (ECF No. 154.)  Respondent ultimately requested that the motion be denied.  (*Id*. at 5.)

Petitioner filed a reply on August 14, 2023.  (ECF No. 155.)  Accordingly, petitioner's motion is now ripe for resolution.

## II.   Legal Standard

Vaccine Rule 36 allows parties in this program to seek relief from judgment via RCFC 60.  *See* Vaccine Rule 36(a).  Because this case has never been assigned to a judge for review, any motion pursuant to Vaccine Rule 36 is directed to the special master.  *See* Vaccine Rule 36(a)(2).  The special master must file a written ruling on the motion that is then subject to a motion for review.  *See* Vaccine Rule 36(b).

RCFC 60(b) sets forth six circumstances under which the court may relieve a party from a final judgment or order.  Specifically:

(1) Mistake, inadvertence, surprise, or excusable neglect;

(2) Newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under RCFC 59(b);

(3) Fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) The judgment is void;

(5) The judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) Any other reason that justifies relief.

The Federal Circuit has indicated that RCFC 60(b) is a remedial provision that must therefore be liberally construed.  *Patton v. Sec'y of Health & Human Servs*., 25 F.3d 1021, 1030 (Fed. Cir. 1994).  However, because judgments are intended to be final, relief under RCFC 60(b) requires "extraordinary circumstances," *Kenzora v. Sec'y of Health & Human Servs*., 126 Fed. Cl. 588, 595-96 (2016), and "should be used

sparingly," *G.G.M. ex rel. Mora v. Sec'y of Health & Human Servs.*, No. 13-421V, 2015 WL 1275389, at \*2 (Fed. Cl. Spec. Mstr. Feb. 27, 2015), *motion for review denied*, 122 Fed Cl. 199 (2015), *aff'd*, 673 F. App'x 991 (Fed Cir. 2016).  The balancing of these considerations is generally a discretionary determination.  *DiMasi v. Sec'y of Health & Human Servs.*, No. 2022-1854, 2023 WL 4697122, at \*7 (Fed. Cir. July 24, 2023).

However, RCFC 60(c) further requires that any motion pursuant to RCFC 60(b) must be made "within a reasonable time" and more specifically, for subsections (1) through (3), "no more than a year after the entry of the judgment."  Subsection (6), which is not subject to this one-year limitation, is the broadest grant of authority to provide relief in order to achieve justice; however, it "may be successfully invoked 'only when Rules 60(b)(1) through (b)(5) are inapplicable.'"  *DiMasi*, 2023 WL 4697122, at \*8 (quoting *Kemp v. United States*, 142 S.Ct.1856, 1861 (2022)); *see also JGB Enterprises, Inc. v. United States*, 71 Fed. Cl. 468, 472-73 (2006) (explaining that "plaintiff's allegations cannot support the simultaneous pursuit of relief under RCFC 60(b)(1) and (b)(6) because the provisions are mutually exclusive and because plaintiff's entire amended motion is properly construed as seeking relief for 'excusable neglect'").

### III.    Party Contentions

Initially, petitioner invoked RCFC 60(b) without specifying which subsection was applicable.  (ECF No. 149.)  Petitioner explained that when attorneys' fees and costs were awarded, "Petitioner was unaware at that time that [she] had not received an invoice from a consulting expert physician that played a key role in facilitating mediation and ultimate resolution of this matter short of full litigation."[2]  (*Id.* at 1.)  "The expert notified Petitioner's counsel of this oversight on May 24, 2023, and Petitioner immediately prepared this Motion."  (*Id.* at 2.)  Petitioner's motion expresses counsel's need to be reimbursed for the corresponding payment he is obligated to pay to petitioner's expert.  (*Id.*)

In the supplemental brief, petitioner clarifies in response to the undersigned's prompting that she "seeks relief solely under RCFC 60(b)(6)."  (ECF No. 152, p. 2.)  Petitioner indicates that

> Petitioner's requested relief is not based on any "mistake, inadvertence, surprise, or excusable neglect" on her own part or her counsel's part, as contemplated in Rule 60(b)(1).  Rather, the relief is sought due to the delayed submission of an invoice from an expert.  This invoice is not "evidence" nor does it have any basis on the merits of the case.  Rather, it is a costs invoice that is fairly due and payable for service[s] performed in the Program.

---

[2] To be clear, Dr. Souayah's invoice accompanying the motion is for work performed preparing his report, not any direct participation in the parties' mediation.  (ECF No. 149-1.)

(*Id.*)  Petitioner cites two prior decisions by special masters which she contends support the availability of relief under RCFC 60(b)(6) when the grounds for relief were circumstances beyond the control of petitioner's counsel.  *Watson v. Sec'y of Health & Human Servs.*, No. 10-882V, 2016 US Claims LEXIS 1193, at *1 (Fed. Cl. July 25, 2016); *P.S. v. Sec'y of Health & Human Servs.*, No. 16-834V, 2023 US Claims LEXIS 583, at *14-15 (Fed. Cl. Mar. 7, 2023).[3]

Petitioner argues that her counsel only becoming belatedly aware of the unclaimed expert invoice constitutes an "extraordinary circumstance" insofar as it is "extremely rare."  (ECF No. 152, pp. 3-4.)  Further, "[g]iven the nature . . . and amount of the costs invoice, it would be unjust for Petitioner's expert to go unpaid and against the fee-shifting nature of the program for Petitioner or her counsel to bear the burden of those expert costs."  (*Id.* at 2 (footnote omitted).)  In an accompanying footnote, petitioner suggests allowing the payment to go unpaid would "discourage experts from participating" in the program at a time when experts are already difficult to locate for a variety of reasons.  (*Id.* at n. 1.)

In his supplemental response, respondent disagrees that petitioner has demonstrated grounds for relief under RCFC 60(b)(6).  (ECF No. 154, p. 3.)  Respondent notes that this provision requires extraordinary circumstances that require relief to prevent a "grave miscarriage of justice."  (*Id.* (quoting *Kennedy v. Sec'y of Health & Human Servs.*, 99 Fed Cl. 535, 540, 548 (2011), *aff'd*, 485 Fed Appx. 435 (Fed. Cir. 2012)).)  Respondent agrees that petitioner's mistake is unfortunate but characterizes it as a "commonplace" type of error that does not represent an extraordinary circumstance.  (*Id.* at 4.)  Respondent argues that the *Watson* and *P.S.* decisions cited by petitioner are not analogous to the present situation because they did not involve an error on counsel's part.  (*Id.* at n. 1.)

Regarding RCFC 60(b)(1), respondent explains that prior cases have cited Black's Law Dictionary for the proposition that a "mistake" is an "error, misconception, or misunderstanding; an erroneous belief."  (*Id.* at 4 (quoting *Curtis v. United States*, 61 Fed. Cl. 511, 514 (2004)).)  Respondent stresses that petitioner's counsel's billing records reflect that, in advance of filing the application for attorneys' fees and costs, counsel did have a conversation with Dr. Souyayah on March 5, 2021, about his final bill.  (*Id.* at 4-5 (citing ECF No. 143-2, p. 166).)  Thus, respondent contends petitioner's counsel did, in fact, make a mistake.  (*Id.* at 4.)  Because RCFC 60(b)(1) rather than RCFC 60(b)(6) applies, respondent submits that petitioner's motion is time barred by RCFC 60(c).  (*Id.* at 5.)

In her reply, petitioner stresses that RCFC60(b)(6) constitutes a "grand reservoir of equitable power to do justice in a particular case."  (ECF No. 155, p. 2 (quoting *M.D. ex rel. Dilascio v. Sec'y of Health & Human Servs.*, 153 Fed. Cl. 544, 559 (2021) (quoting *Lazare Kaplan In'l Inc. v. Photoscribe Techs., Inc.*, 714 F.3d 1289, 2195 (Fed. Cir. 2013).)  Petitioner stresses that the determination of whether extraordinary circumstances exist lies within the court's discretion and that the court must consider

---

[3] *See also* 2016 WL 4491492 and 2023 WL 2770936 respectively.

whether "the need for truth outweighs the value of finality in litigation."  (*Id.* (quoting *G.G.M. ex rel. Mora*, 2015 WL 1275389, at *2).)  Petitioner reiterates that the circumstances at issue are extraordinary because of the rarity of the situation.  (*Id.*)  Moreover, petitioner argues that the deadline set by RCFC60(c) is "arbitrary" and in weighing the value of finality of judgment, payment of the costs at this stage is harmless whereas non-payment would be a deterrent to future expert participation.  (*Id.*)

## IV.    Discussion

I agree with petitioner that within the Vaccine Program it would ordinarily be preferable for petitioner's counsel to be reimbursed for reasonable expert costs fairly incurred.  However, I am also compelled to find, as respondent ultimately argues, that the basis for petitioner's motion to alter the judgment is a commonplace form of mistake or excusable neglect rather than constituting any sort of extraordinary circumstance.  Thus, because RCFC 60(b)(1) applies to the circumstances presented, petitioner cannot rely on RCFC 60(b)(6) to circumvent the timing requirement of RCFC 60(c).  *E.g.*, *DiMasi*, 2023 WL 4697122, at *8 (explaining that RCFC 60(b)(6) "may be successfully invoked 'only when Rules 60(b)(1) through (b)(5) are inapplicable'" (quoting *Kemp*, 142 S.Ct.at 1861)).  Therefore, even though I would likely find that the circumstances are appropriate for relief under RCFC 60(b)(1), the motion must be denied because it was filed more than a year after judgment entered.  Regardless of how understandable the mistake or sympathetic the circumstances, the law clearly requires this result.

The Federal Circuit has explained that "a 'mistake' . . . . is a 'factual misconception or misunderstanding' or an 'error of law or fact,' whether by a party or by the court."  *DiMasi*, 2023 WL 4697122, at *7 (quoting *Kemp*, 142 S.Ct. at 1862).  Here, petitioner is unpersuasive in suggesting that the fact of Dr. Souayah's dilatory billing practices indicates there was no mistake on counsel's part.  Dr. Souayah's behavior alone cannot explain entry of the complained of judgment.  Rather, the mistake at issue is counsel's filing of an application for attorneys' fees and costs under the misconception that he had properly accounted for all of petitioner's expenses and filed a complete application for fees and costs.  In short, petitioner's counsel mistakenly requested the wrong amount for reimbursement.  Despite disclaiming culpability, petitioner's briefing on the instant motion includes several acknowledgments that counsel was mistaken when he filed the motion for attorneys' fees and costs.  (ECF No. 149, p. 1 (explaining that the issue is that counsel filed the fee application "unaware at the time that he had not received an invoice from the consulting expert"); *id.* at 2 (referring to the issue as an "oversight"); ECF No. 152, p. 2 (suggesting counsel filed the application for fees and costs because he believed Dr. Souayah's invoice was "satisfied and closed")).

Even granting that Dr. Souayah may have engaged in counterproductive conduct that contributed to the mistake, petitioner is not persuasive in contending that the problem was entirely beyond counsel's control.  Importantly, counsel's billing records reveal activities that could have, but apparently did not, catch the mistake.  Petitioner's

billing records reflect that 3.4 hours of paralegal time were billed for preparation of the fee application, including time spent "review[ing] and organiz[ing] expenses for reimbursement." (ECF No. 143-2, p. 166.) Additionally, counsel billed about 5 hours for the preparation of the application for attorneys' fees and costs. (*Id.*) These activities included "final review of the fee app and supporting documents." (*Id.*) Therefore, counsel necessarily should have been aware that the fee application and supporting materials he reviewed reflected only an initial "retainer" for Dr. Souayah's work that did not constitute a final bill or capture the scope of his actual work on the case. In fact, the supporting documentation petitioner filed specifically indicates the $4,000 retainer was paid in advance of even sending Dr. Souayah the medical records from the case. (*Id.* at 78.) This stands in contrast to the separate "retainer" and "final bill" he accounted for relative to Dr. Steinman's work. (*Id.* at 168-69.) Moreover, the instant motion specifically confirms that counsel was well aware of the scope of the work Dr. Souayah performed in the case (describing it as "key") and that Dr. Souayah had at some point "agreed to defer compensation until the end of the matter." (ECF No. 149, p 1.) Thus, there is good reason evident on the face of the billing records to question whether requesting reimbursement of a single $4,000 retainer payment to Dr. Souayah should have given counsel pause at the time he reviewed and filed the motion.

In fact, there is evidence in counsel's billing records that he did attempt to account for Dr. Souayah's final bill at the close of the case. In preparing the fee application, counsel's billing records reflect that while preparing the fee application, he sent "e-mails to all experts regarding their final bills and case result," he then recorded that he "confer[red] with Dr. Souayah regarding his bill" and made a "note [to] file with expert costs per their comments." (ECF No. 143-2, p. 166.) Without knowing the substance of counsel's documented conversation with Dr. Souayah, it is impossible to know whether these entries incriminate counsel or Dr. Souayah as the root source of the mistake. However, this ambiguity does not help petitioner because it is not actually necessary to resolve Dr. Souayah's and counsel's relative culpability. Even assuming Dr. Souayah was *entirely* responsible for the misunderstanding, that would still be an assertion of excusable neglect on petitioner's part, which also explicitly falls under RCFC 60(b)(1). *See e.g.*, *G.G.M. ex rel. Mora*, 2015 WL 1275389, at \*4 (explaining that "[a] litigant's action or inaction that is due solely to intervening circumstances beyond its reasonable control will qualify as 'excusable neglect'" (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 394 (1993)).

In all events, petitioner bore the burden of proof with respect to all claimed costs and therefore bore the ultimate responsibility for ensuring the request for reimbursement was complete regardless of what Dr. Souayah said or did. Contrary to what petitioner implicitly asserts, petitioner's counsel is not merely a conduit through which Dr. Souayah's invoice was meant to flow to the court. Petitioner's counsel is meant to play an active role both in ensuring that only reasonable costs are incurred and in advocating for the reasonableness of the costs presented to the court for reimbursement. *E.g.* *Perriera v. Sec'y of Health & Human Servs.*, No. 90-847V, 1992 WL 164436, at \*4-5 (Fed. Cl. Spec. Mstr. June 12, 1992) (explaining that "[t]his court has continuously warned counsel of their obligation to monitor expert fees . . . . an unreasonable expert

fee is not converted into a reasonable fee simply because it was prepaid"), *mot rev. den'd*, 27 Fed. Cl. 29 (1992), *aff'd*, 33 F.3d 1375 (Fed Cir. 1994); *see also Gowans v. Sec'y of Health & Human Servs.*, No. 14-440V, 2017 WL 1842824, at *5 (Fed. Cl. Spec. Mstr. Apr. 12, 2017) (scrutinizing the reasonableness Dr. Souayah's itemized billing invoice).  Given counsel's appropriate role in presenting fees and costs for reimbursement, arguments suggesting petitioner and her counsel may be blameless for the omission of Dr. Souayah's invoice speak more to whether RCFC 60(b)(1) *itself* would allow for relief.  They do not suggest that the underlying issue was anything other than either a mistake or excusable neglect falling within the scope of RCFC 60(b)(1). *G.G.M. ex rel. Mora*, 2015 WL 1275389, at *2 (explaining that analysis under RCFC 60(b)(1) includes consideration of the movant's culpable conduct).

Petitioner characterizes the situation at issue as being "extremely rare;" however, that does not render the circumstances extraordinary such that RCFC 60(b)(6) would apply.  In fact, mistakenly incomplete applications for attorneys' fees and costs are common enough that there is a clear track record of petitioners being granted relief pursuant to RCFC 60(b)(1) under at least somewhat similar circumstances. *See, e.g.*, *Yalacki v. Sec'y of Health & Human Servs.*, No. 14-278V, 2021 WL 2070629, at *2 (Fed. Cl. Spec. Mstr. Apr. 27, 2021) (finding application of RCFC 60(b)(1) appropriate where an expert's travel costs "were paid via wire transfer, instead of check, and thus, the cost was 'overlooked'"); *Keenan v. Sec'y of Health & Human Servs.*, No. 17-189V, 2018 WL 5573432, at *1 (Fed. Cl. Spec. Mstr. Sept. 12, 2018) (applying RCFC 60(b)(1) where "[c]ounsel acknowledges that petitioner's retained expert . . . submitted a supplemental fee invoice . . . but contends the invoice 'was not recorded within counsel's office'"); *Sweat ex rel. S.S. v. Sec'y of Health & Human Servs.,* No. 14-329V, 2016 WL 4483039, at *1-2 (Fed. Cl. Spec. Mstr. June 16, 2016) (applying RCFC 60(b)(1) where guardianship costs were inadvertently omitted from the parties' stipulation regarding attorneys' fees and costs); *Schmidt v. Sec'y of Health & Human Servs.*, No. 13-143V, 2016 WL 4483031, at *2 (Fed. Cl. Spec. Mstr. June 7, 2016) (same).

The cases cited by petitioner with regard to application of RCFC 60(b)(6) (*Watson* and *P.S.*) are inapposite.  In both of those cases, there was no mistake or excusable neglect at issue.  Rather, counsel could not collect the reimbursement of fees and costs pursuant to the judgment awarding the funds jointly to counsel and petitioner because the petitioner refused to cooperate in signing the resulting check. *Watson*, 2016 WL 4491492, at *1; *P.S.*, 2023 WL 2770936, at *1.  It should also be noted that the circumstances in *Watson* and *P.S.* have not invariably led to relief under RCFC 60(b). *See Ortiz-Mutilitis v. Sec'y of Health & Human Servs.*, No. 03-0059V, 2012 WL 3902472 (Fed. Cl. Spec. Mstr. Aug. 14, 2012).[4]

---

[4] It is also worth noting that the prior cases where petitioners have failed to cooperate in signing checks also do not suggest that the timing of the motion becomes wholly irrelevant when RCFC 60(b)(6) is invoked.  Even when applying RCFC 60(b)(6), an application to reopen judgment must still be made within a reasonable period of time.  Thus, in *Watson*, where the special master did apply RCFC60(b)(6), he still considered the timing of the motion as a factor in granting the requested relief.  2016 WL 4491492, at *3.  Specifically, he distinguished *Ortiz-Mutilitis* by noting that the holding in *Ortiz-Mutilitis* "is more appropriately followed where the request for relief from judgment is made so long after the fees check has issued that it is evident counsel has been dilatory in making the request."  *Id.*

Application of RCFC 60(b)(6) is only appropriate where extraordinary circumstances are present and substantial rights of a party would be violated absent relief.  *Kollasch ex rel. Q.K. v. Sec'y of Health & Human Servs.*, No. 10-717V, 2021 WL 1728714, at *4 (Fed. Cl. Spec. Mstr. Apr. 6, 2021) (citing *Freeman v. Sec'y of Health & Human Servs.*, 35 Fed Cl. 280, 281 (1996)); *Coleman v Sec'y of Health & Human Servs.*, No. 06-0710V, 2011 WL 6828475, at *4 (Fed Cl. Spec. Mstr. Dec. 7, 2011)).  A substantial right of a petitioner may be harmed where the petitioner has been deprived of a full and fair opportunity to be heard on the merits.  *Kollasch ex rel. Q.K.*, 2021 WL 1728714, at *4.  However, in this case, petitioner did have a full and fair opportunity to be heard on attorneys' fees and costs.  The timing and content of petitioner's motion for attorneys' fees and costs was of petitioner's choosing and those costs that were requested were reimbursed in full.  The motion was filed 76 days after the merits judgment had entered whereas the Vaccine Rule 13(a)[5] allows such motions to be filed up to 180 days after judgment.  Thus, it is not the case that any looming filing deadline contributed to counsel's error or the ultimate outcome of the motion.  Moreover, the decision awarding attorneys' fees and costs itself alerted counsel to the fact that no invoice had been submitted for Dr. Souayah's work.  (ECF No. 145, p. 4, n. 4.)  Yet, after the decision on the motion issued, petitioner voluntarily filed a joint notice not to seek review on behalf of the parties, signaling petitioner's acceptance of the decision and expediting entry of judgment.  (ECF No. 146.)  Thereafter, by operation of RCFC 60(c), petitioner was further provided up to one full year to file this motion, which is not ungenerous as a grace period within which to realize the type of mistake at issue.

Nonetheless, petitioner argues that the failure to reimburse duly incurred expert costs is an injustice in itself and not in keeping with the spirit of the Vaccine Program.  If petitioner had filed this motion within one year of judgment, these would have been strong arguments favoring a grant of relief under RCFC 60(b)(1).  *E.g.*, *G.G.M. ex rel. Mora*, 2015 WL 1275389, at *2 (explaining that factors to consider in granting relief under RCFC 60(b)(1) include whether there is a meritorious claim as well as prejudice to the opposing party).  However, while application of RCFC 60(b) generally involves a discretionary balancing of factors, "the one year limitation imposed on motions brought under subsections (1), (2), and (3) of the Rule is considered 'an absolute bar to motions filed after that period.'"  *Freeman*, 35 Fed. Cl. at 283 (quoting *United States v. Berenguer*, 821 F.2d 19, 21 (1st Cir. 1987)).  Petitioner stresses RCFC 60(b) as a "grand reservoir of equitable power," but RCFC 60(b) as a whole is also limited by RCFC 60(c) and none of petitioner's arguments regarding the equities of the situation suggest that RCFC 60(c)'s one-year time limit should be viewed as inapplicable given the facts presented.  Instead, petitioner's criticism of RCFC 60(c)'s one-year time limit as "arbitrary" reads as a not-so-subtle encouragement to simply ignore the rule.  However, the Supreme Court has been clear in explaining that Rule 60(b)(1)

---

[5] Of note, the current rules, which included amendments to Vaccine Rule 13, took effect on July 31, 2023. However, none of the amendments that took effect on July 31, 2023, are relevant to the issues presented herein.

permits courts to reopen judgments for reasons of "mistake, inadvertence, surprise, or excusable neglect," but only on motion made within one year of the judgment.  Rule 60(b)(6) goes further, however, and empowers the court to reopen a judgment even after one year has passed for "any other reason justifying relief from the operation of the judgment."  These provisions are mutually exclusive, and thus a party who failed to take timely action due to "excusable neglect" may not seek relief more than a year after the judgment by resorting to subsection (6).

*Pioneer Inv. Servs. Co.*, 507 U.S. at 393.

I am not insensitive to the fact that this order confirms the mistake at issue to have been a costly one.[6]  However, that does not render this an unduly harsh result given that it flows from a straightforward application of longstanding rules and there was ample opportunity to avoid this outcome.  For that reason, and especially considering how long it took Dr. Souayah to finally take action, it is unlikely there will be any chilling effect on expert participation in the program as petitioner fears.

## V.    Conclusion

For all the reasons discussed above, petitioner's motion is **DENIED**.

**IT IS SO ORDERED.**

<u>s/Daniel T. Horner</u>
Daniel T. Horner
Special Master

---

[6] I do note that petitioner's initial motion and supplemental brief are not entirely clear with regard to whether it is Dr. Souayah or petitioner's counsel who will ultimately bear the cost of Dr. Souayah's delayed invoice going unreimbursed by the program.  However, that is a question of the terms of their own private agreement and, in any event, the answer would not change the outcome.  This is not the forum within which to attempt to sort out any potential dispute between counsel and Dr. Souayah.  *Accord Ortiz-Mutilits*, 2012 WL 3902472, at *4 (suggesting that for some types of dispute a state court action may be a more appropriate remedy than a reopening of judgment).